# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JWM MEMPHIS, LLC | ) | |
| | ) | |
|     Plaintiff | ) | |
| | ) | Case No. 2:24-cv-2316 |
| v. | ) | |
| | ) | JURY DEMANDED |
| TERRACON CONSULTANTS, INC. | ) | |
| | ) | |
|     Defendant | ) | |

## DEFENDANT TERRACON CONSULTANTS, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS

Defendant Terracon Consultants, Inc. ("Terracon" or "Defendant"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the Complaint filed by Plaintiff JWM Memphis, LLC ("Plaintiff") for failure to state a claim upon which relief may be granted. In support thereof, Terracon submits as follows[1]:

### Introduction

This is a construction dispute case involving the development of the Memphis Airport Logistics Center, a large, recently constructed warehouse located at 5300 Airways Boulevard in Memphis, Tennessee. Plaintiff, however, is not the original owner of the warehouse. Nor is the Defendant, Terracon, a contractor or subcontractor who built the warehouse. Instead, as alleged in the Complaint, Plaintiff purchased the warehouse from the original owner (Holmes Airways Partners, LLC) after it was completed by the original owner's general contractor, Evans General

---

[1] Terracon is also attaching clean versions of the exhibits attached to Plaintiff's complaint as the exhibits in the state court docket were scanned by that clerk of court in black-and-white and in very poor resolution. Clean copies of the exhibits were kindly provided by Plaintiff's counsel after pointing out the difficulty in reading them.

Contractors, LLC ("Evans"). Terracon's role during the construction was as a geotechnical engineering company retained by the original owner to (a) conduct testing of the soil before the warehouse was built and (b) to observe, sample, and test the earthwork activities by the original owner's contractors on an "as-requested basis."

As the Complaint makes clear, Terracon performed its services pursuant to two agreements it executed with TPA Group, LLC.[2] The first agreement, denominated by Plaintiff as the "Soils Design Agreement," governed Terracon's obligations as to the testing of the soil before the warehouse was built.[3] *See* ECF No. 14-2 at 2-21 (Exhibit A to Plaintiff's Complaint). The second agreement, denominated by Plaintiff as the "Materials Testing Contract," governed Terracon's obligations as to the observation, sampling, and testing of the earthwork activities (i.e., construction activities) by the original owner's contractors on an "as-requested basis." *See* ECF No. 14-2 at 162-71 (Exhibit D to Plaintiff's Complaint).

Critically, Plaintiff is a stranger to both agreements. It is not a signatory to them, and it alleges no facts to establish that it is a successor-in-interest or third-party beneficiary. Nor could it be as a matter of law. Nonetheless, Plaintiff seeks to hold Terracon liable for alleged "nonconformities" in the "placement and compaction" of soils by the original owner's general

_____

[2] Contrary to Plaintiff's allegation in Paragraph 7 of its Complaint, TPA Group was not the "then-owner of the Property." As the public records of the Shelby County Register of Deeds reflect, the future warehouse property actually consisted of six parcels of vacant land, assembled between June 1, 2020, through June 24, 2020 and owned by Holmes Airways Partners, LLC. *See* ECF No. 14-3 (four warranty deeds to Holmes Airways Partners, LLC as grantee of the six parcels comprising the warehouse property). That being said, TPA Group and Holmes Airways Partners are related entities. For example, Plaintiff states that Holmes Airways Partners "in care of TPA Group, LLC" entered into a contract with an architect to design and prepare construction documents for the warehouse project. Complaint at ¶ 14. Plaintiff also states that "Holmes, in care of TPA Group, entered into a contract with Evans General Contractors, LLC to construct the Project." Complaint at ¶ 16. Though it's not clear how one party enters into a contract "in care of" another, Terracon does not dispute that Holmes Airways Partners is an affiliate (most likely a single purpose LLC) of TPA Group. For purposes of the arguments set forth in this motion, TPA Group and Holmes Airways Partners are collectively referred to as the "original owner."

[3] Plaintiff's chosen nomenclature is a bit confusing. Terracon was not *designing* soil; per the agreement, it was *testing* the preexisting soil on the vacant land, conducting field exploration, performing lab testing, and exploring the subsurface to ultimately provide recommendations concerning the design and construction of the foundation, floor flaps, and pavements for the proposed warehouse project.

contractor and its subcontractors. *See* Complaint at ¶¶ 6, 20, 27. Seemingly aware that it cannot enforce Terracon's agreements with the original owner—after all, Plaintiff does not press a breach of contract claim—Plaintiff asserts no less than seven different claims in a desperate attempt to hoist liability on Terracon. All of Plaintiff's theories of liability fail as a matter of law. The Complaint should be dismissed with prejudice.

### Factual and Procedural Background

**A.    Terracon contracts with non-party TPA Group.**

As mentioned earlier, Terracon entered into two agreements with TPA Group on January 2, 2020, and October 23, 2020, respectively: the Soils Design Agreement and the Materials Testing Contract. It appears that only the Materials Testing Contract is at issue because the Soils Design Agreement is never mentioned again after briefly being introduced at the beginning of the Complaint (*see* Complaint at ¶¶ 7, 9) and the substantive allegations of Plaintiff's claims all stem from issues with soil placement, compacting, reporting, and testing *during the construction* of the warehouse project. *See, e.g.*, Complaint at ¶ 12 (referring to things that should occur "during the earthwork construction of the Project"); ¶ 13 (same); ¶¶ 19-20 (same); ¶ 29 (alleged nonconformities "during construction of the Project"); ¶¶ 49-50 (alleged deficiencies in the "placement and compaction" of the soil and complaining of deficiencies in the soil "used, placed, and/or compacted" during construction); ¶ 61 (same); ¶ 66 (complaining of monitoring as to "soils placed and compacted"); ¶ 72 (same); ¶ 78 (same). Either way, both agreements contain identical clauses and thus can be analyzed together. *Compare* Soils Design Agreement, ECF No. 14-2 at 3-4, *with* Materials Testing Contract, ECF No. 14-2 at 170-71. Specifically, both agreements provide in pertinent part as follows:

> **Third Party Reliance.** This Agreement and the Services provided are for Consultant and Client's sole benefit and exclusive use with no third party

beneficiaries intended. Reliance upon the Services and any work product is limited to Client, and is not intended for third parties other than those who have executed Consultant's reliance agreement, subject to the prior approval of Consultant and Client.

*See* Soils Design Agreement at ¶ 5, Materials Testing Contract at ¶ 5. The agreements also include

a conspicuous limitation of liability clause that provides as follows:

> **LIMITATION OF LIABILITY. CLIENT AND CONSULTANT HAVE EVALUATED THE RISKS AND REWARDS ASSOCIATED WITH THIS PROJECT, INCLUDING CONSULTANT'S FEE RELATIVE TO THE RISKS ASSUMED, AND AGREE TO ALLOCATE CERTAIN OF THE ASSOCIATED RISKS. TO THE FULLEST EXTENT PERMITTED BY LAW, THE TOTAL AGGREGATE LIABILITY OF CONSULTANT (AND ITS RELATED CORPORATIONS AND EMPLOYEES) TO CLIENT AND THIRD PARTIES GRANTED RELIANCE IS LIMITED TO THE GREATER OF $100,000 OR CONSULTANT'S FEE, FOR ANY AND ALL INJURIES, DAMAGES, CLAIMS, LOSSES, OR EXPENSES (INCLUDING ATTORNEY AND EXPERT FEES) ARISING OUT OF CONSULTANT'S SERVICES OR THIS AGREEMENT. PRIOR TO ACCEPTANCE OF THIS AGREEMENT AND UPON WRITTEN REQUEST FROM CLIENT, CONSULTANT MAY NEGOTIATE A HIGHER LIMITATION FOR ADDITIONAL CONSIDERATION IN THE FORM OF A SURCHARGE TO BE ADDED TO THE AMOUNT STATED IN THE COMPENSATION SECTION OF THE PROPOSAL. THIS LIMITATION SHALL APPLY REGARDLESS OF AVAILABLE PROFESSIONAL LIABILITY INSURANCE COVERAGE, CAUSE(S), OR THE THEORY OF LIABILITY, INCLUDING NEGLIGENCE, INDEMNITY, OR OTHER RECOVERY. THIS LIMITATION SHALL NOT APPLY TO THE EXTENT THE DAMAGE IS PAID UNDER CONSULTANT'S COMMERCIAL GENERAL LIABILITY POLICY.**

*Id.* at ¶ 6 (capitalization and bold in original). TPA Group and Terracon also agreed as to when

causes of action would accrue under the agreements:

> Causes of action arising out of Consultant's Services or this Agreement regardless of cause(s) or the theory of liability, including negligence, indemnity or other recovery shall be deemed to have accrued and the applicable statute of limitations shall commence to run not later than the date of Consultant's substantial completion of Services on the project.

*Id.* at ¶ 7. Further, the two sophisticated businesses contracted as to certain warranty limitations:

**Warranty.** Consultant will perform the Services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale. **EXCEPT FOR THE STANDARD OF CARE PREVIOUSLY STATED, CONSULTANT MAKES NO WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, RELATING TO CONSULTANT'S SERVICES AND CONSULTANT DISCLAIMS ANY IMPLIED WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

*Id.* ¶ 8 (capitalization and bold in original). The agreements also include a waiver of consequential damages:

**CONSEQUENTIAL DAMAGES. NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR LOSS OF PROFITS OR REVENUE; LOSS OF USE OR OPPORTUNITY; LOSS OF GOOD WILL; COST OF SUBSTITUTE FACILITIES, GOODS, OR SERVICES; COST OF CAPITAL; OR FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT, PUNITIVE, OR EXEMPLARY DAMAGES.**

*Id.* ¶ 10 (capitalization and bold in original). Finally, the agreements contain a choice of law provision that they are to be "governed by and construed according to Kansas law." *Id.* ¶ 11.

### B.   Plaintiff acquires the warehouse property.

A certificate of occupancy for the warehouse property was issued on March 2, 2022. *See* Complaint at ¶ 22. A few months later, J.W. Mitchell Company, LLC (*not* the Plaintiff but rather an affiliate of the Plaintiff) allegedly purchased the property from the original owner. *See* Complaint at ¶ 23.[4] Thereafter, Plaintiff obtained title to the warehouse property on June 14, 2022, with the deed being recorded on July 11, 2022. *See* Complaint at ¶ 24; Special Warranty Deed, ECF No. 14-4.

### C.   Nonconformities are discovered and legal proceedings commence.

In September 2022, Plaintiff's tenant who had leased the warehouse, Medtronic, discovered that certain portions of the warehouse interior floor slab had collapsed. *See* Complaint

---

[4] No deed of any type is attached to the Complaint—nor is there one in the public records of Shelby County—reflecting a transfer of title from the original owner to J.W. Mitchell Company, LLC.

at ¶ 26. Terracon went onsite to assess the cause of the slab collapse, and ground penetrating radar testing performed by Terracon revealed voids beneath the concrete floor slab. *See* Complaint at ¶ 28. Medtronic (Plaintiff's tenant) allegedly performed repair work at the recommendation of non-party Braun Intertec and "demanded payment from Plaintiff in excess of $2,000,000 for the work performed." *See* Complaint at ¶¶ 29-31. Plaintiff does not allege how much of this demanded sum, if any, it paid to Medtronic. Sometime in late 2022, Plaintiff filed an arbitration proceeding against its general contractor, Evans. *See* Complaint at ¶ 32.

Approximately a year-and-a-half later, on April 15, 2024, Plaintiff filed this lawsuit in Shelby County Circuit Court ostensibly after some retained experts in the pending arbitration authored reports which, in part, opined as to Terracon's alleged negligence. *See* Complaint at ¶¶ 32-34. Terracon removed the case to the Western District of Tennessee based on diversity. *See* ECF No. 1.

## Legal Standard

A complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint needs to state "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, a court must construe a plaintiff's complaint in the light most favorable to the plaintiff and take the factual allegations stated therein as true. *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

Regardless of the alleged facts, however, a court must grant a motion to dismiss when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."); *Barney v. PNC Bank (In re Estate of Barney)*, 714 F.3d 920, 926 (6th Cir. 2013) (affirming a motion to dismiss granted under Rule 12(b)(6) and explaining that there is no reason not to grant a motion to dismiss where it can be ascertained from the allegations in the complaint that there is a defense that bars plaintiff's claim); *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (explaining that a motion to dismiss should be granted where the face of the complaint demonstrates that relief is barred by an affirmative defense).

In addition to the allegations of a complaint, a court reviewing a defendant's motion to dismiss may also consider documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims. *Hall v. Meisner*, 565 F. Supp. 3d 953, 965 (E.D. Mich. 2021) (citing *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) (internal quotation marks and citations omitted)); *see also Armengau v. Cline*, 7 Fed. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings."); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings).

<u>Argument</u>

I.   **Plaintiff's professional negligence and negligence claims fail as a matter of law because Terracon owed no duty to Plaintiff.**

Plaintiff's professional negligence and negligence claims are essentially the same as they boil down to the contention that "[a]s a consequence of Terracon's breach of its professional standard of care, nonconforming and/or defective soils were allowed to be used, placed, and/or compacted on the project." Complaint at ¶ 50; Complaint at ¶ 62 (the same sentence but replaced "breach of its professional standard of care" with "breach of its duty"). The problem for Plaintiff is that Terracon owed no duty to Plaintiff, a complete stranger to the relationship between Terracon and the original owner.

To establish a claim for negligence, a plaintiff must allege facts sufficient to show: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. *See Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009). Professional negligence is a species of negligence that applies when the defendant practices a profession requiring a license or whose conduct involves specialized knowledge or skill. Tennessee courts recognize that "[p]rofessionals are judged according to the standard of care required by their profession." *Dooley v. Everett*, 805 S.W.2d 380, 384-85 (Tenn. Ct. App. 1990). However, the elements of both causes of action are the same: duty, breach of the duty, causation, and damages. *See Littleton v. TIS Ins. Servs.*, No. E2018-00477-COA-R3-CV, 2019 Tenn. App. LEXIS 13, at *12 (Tenn. Ct. App. Jan. 9, 2019). Whether a defendant owes a plaintiff a duty is a question of law for the Court to decide. *Hagen v. U-Haul Co.*, 613 F. Supp. 2d 986, 991 (W.D. Tenn. 2009) (citing *Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn. 1993)).

Here, Plaintiff alleges that Terracon breached a duty to it to reasonably conduct the observation, testing, and inspections of the soil placement and compaction that was done by the original owner's contractors. However, the Tennessee Supreme Court has held, under analogous circumstances, that an inspector does not have a duty to third-parties for damages resulting from an allegedly negligent contractual inspection. *See Grogan v. Uggla*, 535 S.W.3d 864, 874-75 (Tenn. 2017). In *Grogan*, the state high court held that a defendant home inspector does not owe or assume a duty of care toward third-parties who sustain injuries from negligent premises inspections. The *Grogan* court observed that under these types of scenarios, where a party is hired by a property owner to inspect, a duty to others "can only be imposed 'to the extent actually assumed by the defendant.'" *Id.* at 874 (quoting Restatement (Second) of Torts § 324A). As further explained:

> [T]he agreement was to inspect the property *for the client* [the property owner]. The inspection agreement evidences an expectation by the home inspector that the inspection was for the benefit of the client only. The agreement is between the defendant home inspector and his client and is addressed to the client while also noting that the inspection report would be provided to the client's representative and his real estate agent. The agreement states that "[t]he inspection report is provided solely for the benefit of the Client and may not be relied upon by any other person." . . . . Thus, the defendant home inspector's duty as circumscribed by the agreement and the relevant statutes is owed to the client. While the defendant home inspector agreed during his deposition that the inspection was partly to identify safety risks for the eventual occupiers of the house, nothing in the defendant home inspector's deposition testimony or any other evidence presented indicated that he undertook an additional duty to protect third parties.

*Id.* at 876.

The *Grogan* opinion's rationale is equally applicable here because the agreements executed by Terracon with the original owner included very clear no-third-party-reliance provisions. Those provisions explained that Terracon's services were

for [Terracon] and [the original owner's] sole benefit and exclusive use with no third party beneficiaries intended. Reliance upon the Services and any work product is limited to Client, and is not intended for third parties other than those who have executed Consultant's reliance agreement, subject to the prior approval of Consultant and Client.

In other words, Terracon "did not render services that [it] knew or should have known was for the

protection of third parties because [its] services were for the benefit of [its] client alone and that

[it] therefore did not assume a duty to the plaintiff." *Id.* at 876. Accordingly, absent a duty to

Plaintiff, the claims for professional negligence and negligence both fail as a matter of law.

**II. Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation fail because Plaintiff cannot reasonably or justifiably rely on contracts it was not a party to or a letter not directed to it.**

Under Tennessee law, fraud and fraudulent misrepresentation are the same cause of action.

*See Fulmer v. Follis*, No. W2017-02469-COA-R3-CV, 2018 Tenn. App. LEXIS 749, at *10 (Ct.

App. Dec. 20, 2018) (citing *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)

and *Huddleston v. Harper*, No. E2014-01174-COA-R3-CV, 2015 Tenn. App. LEXIS 519, at *10

(Tenn. Ct. App. June 30, 2015)). The elements of a claim for fraudulent misrepresentation are:

(1) the defendant misrepresented an existing or past fact; (2) the representation was false when it was made; (3) the representation concerned a material fact; (4) the false representation was made knowingly or without belief in its truth or recklessly; (5) the plaintiff reasonably relied on the misrepresented fact; (6) the plaintiff suffered damage caused by the misrepresentation.

*Id.* at *11.

Concealment of a material fact, as contrasted with an affirmative misrepresentation of fact,

can also lead to liability. *See Patel v. Bayliff*, 121 S.W.3d 347, 352-53 (Tenn. Ct. App. 2003)

(citation omitted). To establish a claim for fraudulent concealment, a plaintiff must prove:

(1) a defendant took affirmative action to conceal the cause of action or remained silent and failed to disclose material facts despite a duty to do so; and (2) the plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence.

*Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998) (citation omitted).

Fraudulent concealment is demonstrated through a showing that there was not only a failure to disclose a known fact but there is also "a trick or contrivance" or there exists a duty to disclose. *Cont'l Land Co. v. Inv. Props. Co.*, No. M1998-00431-COA-R3-CV, 1999 Tenn. App. LEXIS 810, at *16 (Tenn. Ct. App. Dec. 10, 1999).

Finally, to make out a prima facie case for negligent misrepresentation, a plaintiff must establish:

> (1) the defendant was acting in the course of his business, employment, or a transaction in which he has a pecuniary interest; (2) the defendant supplied information meant to guide others in their business decisions; (3) the information that the defendant supplied was false; (4) the defendant did not exercise reasonable care in obtaining or communicating the information; and (5) the plaintiff justifiably relied on the information.

*See Homestead Grp., LLC v. Bank of Tenn.*, 307 S.W.3d 746, 751 (Tenn. Ct. App. 2009).

Importantly, reasonable reliance is an essential element of claims for intentional misrepresentation and fraudulent concealment. *Fulmer*, 2018 Tenn. App. LEXIS 749, at *17; *Staggs*, 86 S.W.3d at 224. Indeed, tying all three causes of action together is the element of reasonable or justifiable reliance on the alleged statements by the defendant. "Justifiable reliance is a necessary element in a cause of action based upon negligent . . . misrepresentation." *McNeil v. Nofal*, 185 S.W.3d 402, 409 (Tenn. Ct. App. 2005). However, "[j]ustifiable reliance in this context is not blind faith." *Id.* at 408. And "[t]he burden is not upon the defendant . . . [but] upon the plaintiff to show" such reasonable reliance. *Id.* at 408-09 (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)).

Here, even assuming there were any misrepresentations of fact as to the soil placement and testing done by Terracon in the letter Terracon wrote to the original owner (and there were none), Plaintiff fails to allege facts that would support a finding that it *reasonably* relied—as opposed to *blindly* relied—on any such statements. In fact, it is well-established that under Tennessee law,

contracts are generally presumed to be executed for the benefit of the parties to the contract, not third parties like Plaintiff. *See Owner Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). Put another way, "a stranger to a contract has no right to sue for its breach, but an intended third-party beneficiary may enforce a contract provided the benefit flowing from the contract to that party was intended, not merely incidental." *Id.* As mentioned above and further explained below, Plaintiff is a complete stranger to the contracts executed between Terracon and the original owner of the property. It is not a success-in-interest nor an intended third-party beneficiary. And letters or communications flowing from such contracts are not for the benefit of Plaintiff and it has failed to allege any facts to show that it would be reasonable for Plaintiff to rely on communications which it was not a party to. For these reasons, Plaintiff's claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation all fail.

**III.   The Complaint fails to state a claim for civil conspiracy.**

Count 6 of the Complaint attempts to set forth a claim for civil conspiracy. As the basis for this claim, Plaintiff alleges that Terracon "conspired together with Evans and/or others to be proven at trial in a scheme that was intended to accomplish an unlawful purpose or a lawful purpose by unlawful means," "shared a common plan or design and was aware of the common plan or design and the intent of the other co-conspirators to participate in the common plan or design," and "took overt acts in furtherance of the conspiracy by furnishing documents and reports, including without limitation the Terracon Letter, that were false and, otherwise, made material misrepresentations concerning the placement, compaction, reporting and testing of soils on the Project." Complaint at ¶¶ 84-86. These conclusory statements are the extent of Plaintiff's factual allegations against Terracon in support of its civil conspiracy claim. The claim should be dismissed

in its entirety because it is insufficiently pled, as Plaintiff has not identified "an overt act in furtherance of the conspiracy."

Tennessee law defines an actionable civil conspiracy as "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002)). The elements required for liability are: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (citation omitted).

Furthermore, "[s]ince liability for civil conspiracy depends on the performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort." *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479, 227 U.S. App. D.C. 167 (D.C. Cir. 1983)). "'[T]here is no liability under a theory of civil conspiracy unless there is underlying wrongful conduct.'" *Pagliara*, 605 S.W.3d at 627 (quoting *Levy v. Franks*, 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004)). Thus, if the "claims underlying the allegations for civil conspiracy fail, the conspiracy claim must also fail." *Lane*, 334 S.W.3d at 764 (citations omitted).

Plaintiff makes no allegation in the 33 paragraphs of the "Statement of Facts" in its Complaint that Terracon communicated with Evans *at all* regarding this purported civil conspiracy. Instead, Plaintiff merely conclusorily states in Paragraph 84 that Terracon "conspired

together with Evans and/or others."[5] *See* Complaint at ¶ 84. Terracon acknowledges above that, when reviewing a motion to dismiss, this Court construes Plaintiff's complaint in the light most favorable to Plaintiff and takes the factual allegations stated therein as true. *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[6] *Iqbal*, 556 U.S. at 678.

Plaintiff's civil conspiracy claim is the epitome of what *Iqbal* counsels against: threadbare legal conclusions unsupported by factual allegations. Plaintiff spills seven pages of ink attempting to explain the relationships between these parties, yet never once mentions any communications between Terracon and Evans. *See* Complaint at 2-8. Instead, Plaintiff merely pleads the elements of its civil conspiracy claims *and nothing more*. Plaintiff then attempts to equate Terracon's reports related to the project as the "overt act" required for a civil conspiracy claim. *See* Complaint at ¶ 86. A fair reading of the Complaint reveals that Plaintiff simply fails to chin the bar with its pleading. *See Anderson v. J.R.'s Auto Sales of Union City, LLC*, No. 1:17-cv-01171-STA-egb,

---

[5]  Interestingly, despite Plaintiff being involved with Evans in an arbitration action since 2022—more than one year before Plaintiff filed this action against Terracon, Plaintiff's Complaint is devoid of any facts to support such a bold claim as civil conspiracy.

[6]  Terracon is aware that, as recently as last year, the Sixth Circuit last year reiterated that civil conspiracy claims must be "'pled with some degree of specificity' and [cannot] rely on 'vague and conclusory allegations.'"[6] *Rieves v. Town of Smyrna*, 67 F.4th 856, 862 (6th Cir. 2023) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).  And Terracon is familiar with this Court's guidance from *Spectrum Lighting & Controls, Inc. v. SESCO Lighting, Inc.*, No. 2:18-cv-02253-TLP-cgc, 2018 U.S. Dist. LEXIS 191877, at *15-16 (W.D. Tenn. Nov. 9, 2018), that "[t]here has been some lingering confusion since the *Iqbal* decision over how the federal pleading standard should be applied to a civil conspiracy claim under Tennessee law," ultimately relying upon the thorough opinion from its "sister court"  which "conclude[d] that there is no higher burden upon Plaintiff for pleading a civil conspiracy claim."  *Id.* (quoting *Carroll v. TDS Telecommunications Corp.*, No. 117CV01127STAEGB, 2017 U.S. Dist. LEXIS 213012, at *23-31 (W.D. Tenn. Dec. 29, 2017)). As *Carroll* instructs, Terracon "is obligated to follow the Sixth Circuit."  *Carroll*, 2017 U.S. Dist. LEXIS 213012, at *31.  And as *Rieves* instructs that civil conspiracy claims must be "'pled with some degree of specificity' and [cannot] rely on 'vague and conclusory allegations,'" 826 F.2d at 1538, without the caveats set forth in *Carroll*, Terracon also submits that Plaintiff fails to plead its civil conspiracy claim with some degree of specificity and instead relies on vague and conclusory allegations.  The Sixth Circuit has described this pleading standard as "relatively strict." *See Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). Indeed, Plaintiff's insufficient pleading is more notable given that the tort underlying the civil conspiracy claim is fraud.  *See Carroll*, 2017 U.S. Dist. LEXIS 213012, at *25 ("Fraud and section 1983 claims as the underlying unlawful purpose of the conspiracy claims appear to be the source of much of the specificity standard's bite.").

2018 U.S. Dist. LEXIS 99081, at *12 (W.D. Tenn. June 13, 2018) (granting the defendants' motion to dismiss a civil conspiracy claim that was "entirely devoid of supporting facts"). Accordingly, Plaintiff's civil conspiracy claim should be dismissed.

### IV. Plaintiff's claim for breach of an express warranty fails as a matter of law because the agreements preclude any third-party reliance.

Plaintiff's claim for breach of an express warranty fails as a matter of law under Kansas law because the Agreement bars reliance by a third party like Plaintiff on any warranty provided by the Agreement. *See* Agreement, ¶ 5. To begin, Plaintiff's Complaint is devoid of any allegation that Terracon entered into an agreement or contract (oral or written) directly with Plaintiff. *See* Complaint, *passim*. Thus, the only express warranty referenced in the Complaint is the warranty language provided in Section 5 of the Agreement between Terracon and TPA Group. In the Complaint, Plaintiff alleges that "Terracon expressly and impliedly represented and warranted that Terracon would use reasonable care and skill in the execution of its services, and that such services would be free from defects and fit for its intended purposes." *See* Complaint at ¶ 89. Plaintiff further alleges that "Terracon also expressly and implied represented and warranted that its services and the soils activities on the Project were performed in accordance with the requirements of the Geotechnical Report, the *Building Code*, and the Project requirements." *Id.* ¶ 90. These purported warranties are not in the Agreement.

Rather, as discussed *supra*, Terracon and TPA Group agreed as follows in regard to any warranties:

> Warranty. Consultant will perform the Services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale. **EXCEPT FOR THE STANDARD OF CARE PREVIOUSLY STATED, CONSULTANT MAKES NO WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, RELATING TO CONSULTANT'S SERVICES AND CONSULTANT DISCLAIMS ANY IMPLIED WARRANTIES OR WARRANTIES**

**IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

*Id.* ¶ 8. Plaintiff attempts a sleight of hand, alleging that Terracon "expressly . . . represented and warranted" something that is simply not present in the Agreement. Moreover, Plaintiff ignores the plain language of the Agreement which states in bold capitalized language that "**EXCEPT FOR THE STANDARD OF CARE PREVIOUSLY STATED, CONSULTANT MAKES NO WARRANTIES OR GUARANTEES, EXPRESS OR IMPLIED, RELATING TO CONSULTANT'S SERVICES AND CONSULTANT DISCLAIMS ANY IMPLIED WARRANTIES OR WARRANTIES IMPOSED BY LAW, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**" *Id.*

      1.    *The Agreement bars third party beneficiaries from reliance on the warranty language.*

      Plaintiff has failed to allege sufficient facts to overcome the presumption that contracting parties are acting solely for their own benefit. The contract between TPA Group and Terracon expressly provides that its benefits are exclusively limited to the signatory parties, and neither party intends for any benefits to be conferred to a third party. *See* Agreement for Services, ¶ 5, Ex. A to Complaint at Plaintiff has failed to allege that any provision in the contract, nor the contract as a whole, was intended to operate for its benefit. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.

      Under the laws of Kansas, the party seeking to establish himself as an intended third-party beneficiary has the burden of establishing that some provision of the contract operates to his benefit. *Fasse v. Lower Heating & Air Conditioning, Inc.*, 736 P.2d 930, 933 (1987). "*Unless otherwise agreed between promisor and promisee*, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate

the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1232 (2005) (emphasis added); *see also Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, 535 Fed. Appx. 653, 661 (10th Cir. 2013). A duty is only created to an intended beneficiary as set forth under this approach. *Id*; *see also* Restatement (Second) of Contracts § 302 comment (e). No duty is created to an incidental beneficiary. *Id.*

Under this approach, "[c]ontracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Stovall*, 107 P.3d at 1232. In determining whether the agreement clearly intends a third party as the beneficiary, Kansas law follows the "general rules for construction of contracts." *Byers v. Snyder*, 237 P.3d 1258, 1265 (Kan. Ct. App. 2010). The proper method of review is to look to the contract as a whole rather than isolating one provision. *Fasse*, 736 P.2d at 933. "Where the provisions of a written contract are clear and unambiguous,… [a] contract must be enforced according to its terms so as to give effect to the intention of the parties, and that must be determined from the four corners of the instrument itself." *Id.* at 933. The burden of establishing intended third-party beneficiary status is upon the party seeking it, and the party must show the existence of some provision in the contract that operates to its benefit. *Id.* at 933 (citing *Hartford Fire Ins. Co. v. Western Fire Ins.*, 597 P.2d 622 (Kan. 1979)).

Plaintiff cannot meet this burden because the agreement expressly and unambiguously limits its benefits to the signatory parties. *See* Agreement for Services, ¶ 5. Both agreements between TPA Group and Terracon provide an explicit provision that the services for which they were contracting were for the signatory parties' "sole benefit and exclusive use with no third party

beneficiaries intended." *Id.* This provision alone is dispositive of any assertion of Plaintiff as an intended third party beneficiary. Nevertheless, Plaintiff has not alleged that Terracon's performance of the agreed upon services would satisfy some obligation on the part of TPA Group to pay money to Plaintiff or that TPA Group contracted with Terracon with the intention that Plaintiff would benefit from the services performed by Terracon. *See Stovall*, 107 P.3d at 1232. Accordingly, Plaintiff has failed to state a claim for which relief can be granted, and this action should be dismissed.

        2.     *District courts around the country have enforced similar "no third-party reliance" clauses.*

While Terracon has not located a case from Kansas specifically dealing with a "no third-party reliance" clause, district courts around the country have enforced similar clauses. *See Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 154 (D. Del. 2003) (relying on a settlement agreement's "no third party beneficiaries intended" in dismissing counterclaim); *Nogess v. Poydras Ctr., LLC*, No. 16-15227, 2018 U.S. Dist. LEXIS 99045, at *24-25 (E.D. La. June 13, 2018) (citing a "Reliance and Assignment" clause in the contract at issue in support of the Court's dismissal of claims against defendant Velocity Consulting, Inc., which provided in pertinent part that "no other third party beneficiaries are intended, except as described above"); *Montoya v. Countrywide Bank, F.S.B.*, No. C 09-00641 JW, 2009 U.S. Dist. LEXIS 53920, at *30-31 (N.D. Cal. June 25, 2009) (granting defendants' motion to dismiss plaintiffs' breach of contract claim based on "no third party beneficiaries intended" clause in agreement); *Riggins v. Bank of Am., N.A.*, No. SACV 12-0033 DOC (MLGx), 2013 U.S. Dist. LEXIS 11282, at *25 (C.D. Cal. Jan. 24, 2013) (applying the Northern District of California's holding in *Montoya* and relying upon the "No Third Party Beneficiaries Intended" clause to dismiss claim); *Thurman v. Wells Fargo Home Mortg.*, No. C12-1471-JCC, 2013 U.S.

Dist. LEXIS 109066, at *9 (W.D. Wash. Aug. 2, 2013) (relying upon "No Third Party Beneficiaries Intended" clause in agreement to dismiss claim and deny request to amend complaint). Given that courts around the country routinely enforce such clauses, Terracon respectfully submits that Plaintiff's claim for breach of an express warranty should be dismissed with prejudice as Plaintiff is not a party to the agreement and the agreement does not allow for third party beneficiaries.

**V.  Plaintiff's implied warranty claim fails as a matter of law.**

Under Kansas law, "[b]reach of warranty actions, like all breach of contract actions, must be brought by parties who are in privity of contract." *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 897 (Kan. 1984) (citing *Evangelist v. Bellern Research Corp.*, 433 P.2d 380 (Kan. 1967)). In *Professional Lens Plan*, the Kansas Supreme Court observed that "[p]rivity of contract is that connection or relationship which exists between two or more contracting parties…[and it is] essential to the maintenance of any action on any contract that there should subsist a privity between the plaintiff and defendant in respect of the matter sued." *Id.* at 891.

"An implied warranty is one arising by operation of law and not by express agreement of the parties, the rationale being to protect a party from loss in circumstances where the contract fails to expressly state the prevailing standard of care." *Coker v. Siler*, 304 P.3d 689, 695 (Kan. Ct. App. 2013) (citing *Corral v. Rollins Protective Services Co.*, 732 P.2d 1260 (Kan. 1987)). "The law in Kansas and, indeed, the general rule throughout the United States is that there is 'implied in every contract for work or services a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.' [Citations omitted.]" *Id.* (quoting *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 894 P.2d 881, (Kan. Ct. App. 1995). Kansas courts have found such implied warranties

of workmanlike performance in various agreements, including building contractors and subcontractors. *Id.*; *See Zenda*, 894 P.2d at 891. "Notably, implied warranties of workmanlike performance exist only when the parties have negotiated an underlying agreement for consideration and the agreement does not expressly state the performance will be carried out under the prevailing standard of care for the industry." *Id.*; *See, e.g.*, *Corral*, 732 P.2d at 1260; *Tamarac Dev. Co. v. Delamater, Freund & Assocs.*, 675 P.2d 361 (Kan. 1984); *Ware v. Christenberry*, 637 P.2d 452 (Kan. Ct. App. 1981); *Gilley v. Farmer*, 485 P.2d 1284 (Kan. 1971); *In re Estate of Talbott*, 337 P.2d 986 (Kan. 1959). Necessarily, "there can be no implied warranty of workmanlike performance in the absence of an underlying agreement between the parties to provide services." *Coker,* 304 P.3d at 695.

Here, as previously noted, no underlying agreement between Terracon and Plaintiff exists. Had there been an agreement between Terracon and Plaintiff, Kansas law makes clear that an implied warranty to perform the services skillfully, carefully, diligently, and in a workmanlike manner would be imposed. *See Coker v. Siler,* 304 P.3d 689, 695 (Kan. Ct. App. 2013). However, no such agreement exists and Plaintiff's allegations as to breach of implied warranty should be dismissed.[7]

## VI.   Plaintiff fails to plead that TPA Group assigned its rights under the Terracon Agreements to Plaintiff.

Finally, at no point in its Complaint does Plaintiff allege that TPA Group assigned its rights under the Terracon Agreements to Plaintiff, nor could Plaintiff make such an allegation. The Agreement provides, in pertinent part, "This Agreement shall not be assigned by either party

---

[7]  Even more, as discussed above, the Agreements also include a "no third party reliance" clause and a waiver of implied warranties.

without prior written consent of the other party." Agreement ¶ 2. This lack of assignment is fatal to Plaintiff's breach of warranty claims under both Tennessee law and Kansas law.

The Tennessee Court of Appeals has stated that "[c]ontract rights are generally assignable unless such assignment changes the obligor's position to his detriment or increases the burden or risk imposed on him by the contract." *Packers Supply Co. v. Weber*, No. M2007-00257-COA-R3-CV, 2008 Tenn. App. LEXIS 226, at *13 (Tenn. Ct. App. Apr. 14, 2008). Yet, contracts cannot be assigned when there are "explicit terms prohibiting assignment." *Id.* Kansas has a similar, "general rule" that "a contract is not assignable where the nature or terms of the contract make it nonassignable." *Bolz v. State Farm Mut. Auto. Ins. Co.*, 274 Kan. 420, 426, 52 P.3d 898, 903 (2002) (quoting 6A C.J.S., Assignments § 30, p. 630). Importantly, in Kansas, "[p]rovisions in bilateral contracts which forbid or restrict assignment of the contract without the consent of the obligor have generally been upheld as valid and enforceable when called into question." *City of Topeka v. Watertower Place Dev. Grp.*, 1996 Kan. App. Unpub. LEXIS 760, at *11-12 (Kan. Ct. App. Mar. 29, 1996) (quoting 6 Am. Jur. 2d, Assignments § 22, p. 207); *accord Augusta Medical Complex, Inc. v. Blue Cross*, 230 Kan. 361, 364, 634 P.2d 1123 (1981). "Furthermore, executory contracts for personal services or those involving confidential relationships are generally not assignable by either party unless the contract so provides or unless the other party agrees to the assignment." *Watertower Place*, 1996 Kan. App. Unpub. LEXIS 760, at *11-12.

Plaintiff does not allege that TPA Group obtained the prior written consent of Terracon to assign the Agreements. Nor does Plaintiff attach any document evidencing such prior written consent. Accordingly, Plaintiff's breach of express warranty claim fails for this additional reason.

## Conclusion

For all the foregoing reasons, Plaintiff fails to state any claim upon which relief may be granted. The Complaint should be dismissed with prejudice.

Respectfully submitted,

**LEWIS THOMASON, P.C.**

*s/ Isaac S. Lew*
Stephen C. Barton (#13657)
sbarton@lewisthomason.com
Isaac S. Lew (#36702)
ilew@lewisthomason.com
Nicholas L. Vescovo (#30387)
nvescovo@lewisthomason.com
40 S. Main St., Suite 2900
Memphis, TN 38103
Telephone: (901) 525-8721
Fax: (901) 525-6722

*Counsel for Defendant Terracon Consultants, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by e-mail through the CM/ECF system on June 28, 2024, on all counsel of record on the service list below.

*s/ Isaac S. Lew*
Isaac S. Lew

**Service List**
**Clarence A. Wilbon, Esq.**
clarence.wilbon@arlaw.com
**Annabelle P. Harris, Esq.**
belle.harris@arlaw.com
ADAMS AND REESE LLP
6075 Poplar Ave., Suite 700
Memphis, TN 38119
**Roscoe A. Green III, Esq.**
roscoe.green@arlaw.com
ADAMS AND REESE LLP
100 N. Tampa St., Suite 4000
Tampa, FL 33602
*Counsel for Plaintiff*