**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JWM MEMPHIS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02316-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| TERRACON CONSULTANTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON MOTION TO DISMISS

Plaintiff JWM Memphis, LLC ("JWM") sued Defendant Terracon Consultants, Inc.

("Terracon") in the Circuit Court of Shelby County for negligence, professional negligence,

fraudulent and negligent misrepresentation, fraudulent concealment, civil conspiracy, and breach

of warranty. (ECF No. 1-1.) Terracon then removed the case to federal court (ECF No. 1) and

moved to dismiss (ECF No. 14). JWM opposed the motion. (ECF No. 17.) And Terracon

replied. (ECF No. 19.) For the reasons explained below, the Court **GRANTS** in part and

**DENIES** in part the motion to dismiss.

## BACKGROUND

In January 2020, Terracon entered an agreement with TPA Group, LLC ("TPA") to

perform certain geotechnical engineering services on soil for the Memphis Airport Logistics

Center Project ("Project" or "Property").[1] (ECF No. 1-1 at PageID 5; ECF No. 14-2 at PageID

---

[1] The Project was "a newly constructed, large warehouse structure with a building footprint of
over one million (1,000,000) square feet, located at 5300 Airways Boulevard, Memphis, Shelby
County, Tennessee." (ECF No. 1-1 at PageID 5.) TPA, or its related entity Holmes Airways
Partners, LLC, owned the Property. (*Id.*; ECF No. 14-1 at PageID 572 n.2.) There seems to be

595.[2]) According to the Complaint, Terracon agreed to "explore, test, and perform geotechnical engineering of the existing soils and subsurface conditions for the construction of future warehouse buildings." (ECF No. 1-1 at PageID 5; *see* ECF No. 14-2 at PageID 595–96 (initial contract between TPA and Terracon).) And in August 2020, Holmes Airways Partners, LLC ("Holmes"), in care of TPA, hired Evans General Contractors, LLC ("Evans") to build the buildings for the Project on the soil Terracon had tested. (ECF No. 1-1 at PageID 8.) Evans began working on the site in September. (ECF No. 1-1 at PageID 8.)

Then in October, Terracon and TPA entered a second agreement under which Terracon would "supervise, observe, inspect, report and test the earthwork activities during the construction of the Project" on an "as-requested basis" (collectively with the initial agreement, the "Contracts"). (ECF No. 1-1 at PageID 8; ECF No. 14-2 at PageID 755; *see* ECF No. 14-2 at PageID 762–63.) Just over a year later, in December 2021, Terracon's Senior Engineer for the Project issued a signed, stamped letter "confirming that Terracon's monitoring and testing of the soils that were placed and compacted on the Project were conducted under the supervision of a registered, Terracon engineer and in accordance with the Project specifications and local soil engineering practices." (ECF No. 1-1 at PageID 8; ECF No. 14-2 at PageID 765 (letter confirming test results that the earthwork complied with Project plans, documents, and

---

some dispute on this point, but, because it is a distinction without difference at this stage, the Court will use the facts from the Complaint. (*See* ECF No. 1-1 at PageID 5; ECF No. 14-1 at PageID 572 n.2.) After all, on a motion to dismiss, the Court accepts a plaintiff's factual allegations as true anyway. *See Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024).

[2] Because this case arrived here by notice of removal, the Complaint and its attachments were scanned and uploaded in a difficult-to-read and low-resolution format. (*See* ECF No. 1-1 at PageID 24–540.) Terracon attached clean, color versions of these exhibits to its motion to dismiss to facilitate review of them. (ECF No. 14-1 at PageID 571 n.1; ECF No. 14-2.) The Court cites these cleaner versions but considers them part of the Complaint.

specifications and with soil engineering requirements).)  The Project received a Certificate of

Occupancy in March 2022.  (ECF No. 1-1 at PageID 8.)

In May and June 2022, J.W. Mitchell Company, LLC purchased the Property from

Holmes through a Purchase and Sale Agreement.[3]  (ECF No. 1-1 at PageID 9.)  And about a

week after obtaining the Property, J.W. Mitchell Company, LLC entered into an Assignment and

Assumption of Purchase and Sale Agreement for the Property with JWM, making Plaintiff the

owner of the Property.  (ECF No. 1-1 at PageID 9.)  Then JWM and Holmes entered an

Assignment of Intangible Property, which included, among other things, a "post-construction

completion one-year warranty" from Evans.  (ECF No. 1-1 at PageID 9.)  Holmes also

transferred title to the Property to JWM by Special Warranty Deed, filed with the Office of the

Shelby County Register on July 11, 2022.  (ECF No. 1-1 at PageID 9.)

A few months later, in September, the Property's tenant Medtronic Logistics, LLC

("Medtronic") noticed that the concrete slab of the Project had cracked.  (ECF No. 1-1 at PageID

9.)  Evans refused to make repairs under the one-year warranty and denied liability.  (ECF No. 1-

1 at PageID 9.)  So Medtronic, through its contractor and expert, conducted additional testing

and reports that showed the soil underneath it had "voids and consolidation" and were not

compacted with the proper moisture content "as required and represented by Terracon."  (ECF

No. 1-1 at PageID 9–10.)  Medtronic then undertook the repairs, which cost over $2,000,000,

and demanded JWM pay for them.  (ECF No. 1-1 at PageID 10.)  JWM now seeks to recover

those sums through arbitration with Evans and this litigation with Terracon.  (ECF No. 1-1 at

PageID 10–11.)

---

[3] JWM does not allege that this Purchase and Sale Agreement assigned either contract with
Terracon to J.W. Mitchell Company, LLC or to JWM.  (*See* ECF No. 1-1.)  And the Parties have
stipulated that there was no assignment.  (ECF No. 19 at PageID 1183–84.)

The many layers of contractors, subcontractors, and holding companies make these facts confusing. But, disregarding some of these technicalities of ownership, a simple summary of the facts and allegations is this: TPA hired Terracon to perform geotechnical engineering services and hired Evans to construct the Project on soil Terracon tested. TPA then sold the Property to JWM, and a few months later, JWM's tenant Medtronic noticed the Project's concrete floor had cracked. Evans denied that the cracks were its fault, and Medtronic's agents and experts believed defects in the soil caused the cracks, which allegedly relates to Terracon's work and contractual obligations. Medtronic made $2,000,000 in repairs and apparently recovered that sum from JWM, who then sought recovery from Evans in arbitration and from Terracon in this Court. Before this Court are JWM's claims against Terracon for negligence, professional negligence, fraudulent and negligent misrepresentation, fraudulent concealment, civil conspiracy, and breach of warranty.

## STANDARD

To survive a motion to dismiss, the plaintiff generally must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). But claims for fraud, like intentional misrepresentation and fraudulent concealment, must be "pled with particularity" under Federal Rule of Civil Procedure 9(b). *United States ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441, 448 (6th Cir. 2024) (stating that fraud claims have a heightened pleading standard); *see also Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 526–27 (6th Cir. 2007) (applying the heightened pleading standard for fraud to "all averments of fraud or mistake"); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In any case, "a pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do.'" *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 455 (6th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555); *see also Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 717 (6th Cir. 2022) ("Only factual allegations in the complaint are taken as true; conclusory statements and legal conclusions, even if couched as a factual allegation, are not entitled to be assumed true." (quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79, 681 (2009))).

Courts must accept a plaintiff's factual assertions as true and must resolve all reasonable inferences in favor of the plaintiff. *Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024); *FedEx*, 97 F.4th at 455. And though courts generally restrict their review of the record to the complaint, they "may review exhibits attached to the complaint as well as items appearing in the record of the case." *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). Courts may also look to "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* The Court thus considers the contracts and letter between Terracon and TPA here because they are exhibits to the Complaint and attached to the motion to dismiss as central to the claims raised. (*See* ECF No. 1-1; ECF No. 14-2.)

## ANALYSIS

JWM alleges negligence, misrepresentation, fraudulent concealment, civil conspiracy, and breach of warranty against Terracon. (ECF No. 1-1 at PageID 12–22.) The Court addresses these claims now.

I.      **Negligence**

JWM asserts ordinary and professional negligence claims against Terracon.[4]  (ECF No.

1-1 at PageID 12–17.)  To survive dismissal, a plaintiff asserting negligence must allege "(1) a

duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) a causal

relation between the injury to the plaintiff and the defendant's breach of his duty of care."

*Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 61 (Tenn. 2023).  This causation element

encompasses both proximate cause and cause in fact.  *Grogan v. Uggla*, 535 S.W.3d 864, 871

(Tenn. 2017).

The Parties here do not contest whether JWM has alleged breach, causation, and

damages.  (*See* ECF No. 14-1 at PageID 579–80; ECF No. 17 at PageID 1164–66; ECF No. 19 at

PageID 1184–87.)  And this makes sense because JWM has done so.  (ECF No. 1-1 at PageID

13–14 (alleging seven actions Terracon took that breached the professional standard of care and

that such breaches harmed JWM), 16–17 (alleging five actions Terracon, or those conducting

tests for Terracon, took that breached the ordinary standard of reasonable care and that such

breaches harmed JWM).)

Instead, the Parties dispute whether Terracon owes a duty to JWM.  (ECF No. 14-1 at

PageID 578–80; ECF No. 17 at PageID 1164–66; ECF No. 19 at PageID 1184–87.)  Whether a

defendant owes a duty to a plaintiff is a question of law for the court.  *See Hagen v. U-Haul Co.*,

---

[4] Professional negligence claims apply a different standard for breach of duty than the one used
in ordinary negligence actions, but both share the same essential elements of duty, breach,
causation, and damages.  *See Dooley v. Everett*, 805 S.W.2d 380, 383–85 (Tenn. Ct. App. 1990)
(stating that it is "axiomatic" for a negligence claim to require duty, breach, causation, and
damages and acknowledging that "[p]rofessionals are judged according to the standard of care
required by their profession").

613 F. Supp. 2d 986, 991 (W.D. Tenn. 2009) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)).

### A.    Existence of a Duty

Terracon argues that it did not have a duty to JWM because the Contracts precluded such a duty from arising.  (ECF No. 14-1 at PageID 578–80; *see* ECF No. 14-2 at PageID 595, 762.) Under a provision entitled "Third Party Reliance," the Agreement states: "This Agreement and the Services provided are for [Terracon] and [TPA]'s sole benefit and exclusive use with no third party beneficiaries intended.  Reliance upon the Services and any work product is limited to Client . . . ."  (ECF No. 14-2 at PageID 595, 762.)  In support of this argument, Terracon relies on *Grogan v. Uggla*, 535 S.W.3d 864 (Tenn. 2017).

In *Grogan*, a potential homebuyer hired an inspector to visually inspect a house.  *Id.* at 866.  The inspector allegedly failed to notice that the home's second-story balcony railing did not comply with building code requirements.  *Id.*  And after the buyers purchased the home and moved in, they invited guests over.  *Id.*  During this visit, the defective balcony railing collapsed, causing a guest to fall and sustain injuries.  *Id.*  He then sued the inspector for negligence.  *Id.*

On appeal, the Tennessee Supreme Court listed the elements for a traditional negligence claim and turned to § 37 of the Restatement (Third) of Torts to decide whether the inspector owed a duty to the guest.  *Id.* at 871–73.  Section 37 explains that "[a]n actor whose conduct has not created a risk of physical or emotional harm to another has no duty of care to the other unless a court determines that one of the affirmative duties provided in [other sections of the Restatement] is applicable."  *Grogan*, 535 S.W.3d at 871 (quoting Restatement (Third) of Torts, § 37).  And the comments to § 37 elaborate on this principle, stating that, even with no privity, "the basis for the ordinary duty of reasonable care . . . is conduct that *creates* a risk to another.

Thus, a relationship ordinarily is not what defines the line between duty and no-duty; conduct *creating* risk to another is." *Id.* (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 362–63 (Tenn. 2008) (quoting Restatement (Third) of Torts § 37, Reporter's Note, cmt. c (October 2017 Update))). The *Grogan* court then explained that an inspector does not "create" harm under § 37 and, instead, that his "fail[ure] to identify a source of harm" is what caused the injury. *Id.* at 871–72. And so, the home inspector was not subject to liability unless there was another basis for finding a duty. *Id.* at 872.

In this vein, the court next analyzed the case under Restatement (Second) of Torts § 324A. *Id.* at 871–73. Under § 324A, liability to third parties for negligent performance of an undertaking arises only if, among other things, the individual rendering the services "should recognize" the services "as necessary for the protection of a third person or his things." *Id.* at 874 (quoting Restatement (Second) of Torts § 324A). And it concluded that, based on the inspection contract and the statutes governing the responsibilities of inspectors, the defendant "did not render services that [he] knew or should have known w[ere] for the protection of third parties because [his] services were for the benefit of [his] client alone." *Id.* at 876; *see* Restatement (Second) of Torts § 324A. As a result, he did not assume a duty to the plaintiff. *Grogan*, 535 S.W.3d at 876.

Applying § 324A, Terracon contends that the no-third-party-reliance clause in the Contracts means it did not know JWM would rely on its services, thereby limiting its duty to TPA in the same way the inspector was liable to his "client alone" in *Grogan*. (ECF No. 14-1 at PageID 578–80.) But the Court disagrees with this approach because Terracon did not need to assume an affirmative duty under § 324A to be liable to JWM. *See Grogan*, 535 S.W.3d at 871–73 (only turning to § 324A after deciding that § 37 did not apply). Rather, Terracon only needed

to create a risk of harm to third parties like JWM. *Id.*; *see also Satterfield*, 266 S.W.3d at 362–64 (explaining that, where defendant "engaged in misfeasance that set in motion a risk of harm" to plaintiff, "it is not necessary to analyze in detail whether [defendant] also had duties arising" on alternative grounds).

And so, the Court begins—and ends—its analysis with § 37.  This is because Terracon, as a geotechnical engineer, engages in materially different work from a home inspector, even though both inspect and report on property conditions.  The *Grogan* Court explained that the statutes and regulations for home inspections "specify that the inspection is visual and not a building code inspection." *Grogan*, 535 S.W.3d at 874.  And an inspector does not "create" a risk of harm; rather, its goal is to identify existing sources of harm.  *Id.* at 871.  But a geotechnical engineer like Terracon is not in the same position.

Terracon's role here is allegedly much more rigorous than a "visual" review.  According to the Complaint, Terracon's job was to "engineer, supervise, observe, inspect, report and test the earthwork and soils placed and compacted on the Project" for compliance with essential construction and occupancy requirements.  (ECF No. 1-1 at PageID 12; *see also id.* at PageID 14–15.)  The Complaint also alleges that Terracon agreed to "explore, test, and perform geotechnical engineering of the existing soils and subsurface conditions for the construction of future warehouse buildings."  (ECF No. 1-1 at PageID 5.)  Based on these assertions, geotechnical engineers affect the process and integrity of construction, and an erroneous analysis may mean the soil cannot support the structure placed on it, thereby *creating* a risk of harm to the property or users of it.  Because Terracon, unlike the *Grogan* home inspector, allegedly creates a risk of harm under § 37, the Court will not question whether alternative grounds, such

as § 324A, also impose a duty on Terracon.[5]  *See Satterfield*, 266 S.W.3d at 362–64 (explaining

that, where defendant "engaged in misfeasance that set in motion a risk of harm" to plaintiff, "it

is not necessary to analyze in detail whether [defendant] also had duties arising" on alternative

grounds).

### B.    Scope of Duty

Having decided Terracon has a duty to use reasonable care, which derives from engaging

in conduct that creates a risk of harm, the Court addresses the scope of that duty.  This includes

analysis about to whom and for what Terracon owes its duty.

#### 1.    Third Parties

Terracon argues that its Contracts limit any duty it owes to TPA.  (*See* ECF No. 14-1

(arguing its no-third-party-reliance clauses mean it did not assume a duty to third parties.)  But,

as noted above, this argument relies on the assumption-of-duty analysis of § 324A, which does

not apply here.  JWM contends that Terracon's duty extends to third parties under *TNIJAC101*

*Good 961 Lower Brownsville Road LLC v. FC Cox Constr., LLC*, No. 1:22-cv-01015-STA-jay,

2023 U.S. Dist. LEXIS 121109 (W.D. Tenn. Feb. 14, 2023).  The Court agrees with Plaintiff.

In *FC Cox*, the plaintiff bought an industrial building that suffered from unknown, latent

defects that harmed the structure, including cracks in concrete slabs.  *Id.* at *2–5.  When the prior

owner, who was also the contractor for the building,[6] refused to make repairs, plaintiff sued for

---

[5] In any case, even if the Court conducted a § 324A analysis, it would likely find that JWM plausibly alleged a duty under it.  Accepting all allegations as true and resolving reasonable inferences in favor of JWM, it is plausible that Terracon "knew or should have known" its services "w[ere] for the protection of third parties" based on the professional nature of its work, its knowledge of the Project, and its agreement to comply with building codes.  Restatement (Second) of Torts § 324A.  (*See generally* ECF Nos. 1-1, 14-2.)

[6] Because the defendant-seller was also the contractor, plaintiff-buyer was in privity with the contractor.  *See FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *20.  But the Court explained that its decision on whether a duty existed did not depend on this privity.  *Id.* (stating that, because "the

negligence and breach of contract. *Id.* at *5–6. In the end, the court decided that a contractor has an implicit duty to "build and deliver a workmanlike structure free from major defects and built in a workmanlike manner," *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *25 (citing *Gary R. Prince Revocable Trust v. Blackwell*, 735 F. Supp. 2d 804, 815–16 (M.D. Tenn. 2010) (citing *Dixon v. Mountain Cty. Constr. Co.*, 632 S.W.2d 538, 541 (Tenn. 1982))), and that such duty extends "to all foreseeable users of the property," *id.* (citing *Briggs v. Riversound Ltd. P'ship*, 942 S.W.2d 529, 531 (Tenn. Ct. App. 1996)); *see also* Tenn. Code Ann. § 29-34-104 ("In all causes of action for personal injury or property damage brought on account of negligence, . . . privity shall not be a requirement to maintain such actions."); Restatement (Third) of Torts § 37 (imposing a duty, regardless of privity, when the actor creates a risk of harm to another). And the court clarified that this was an "independent" duty imposed not by contract but "by virtue of the relationship between the contractor and foreseeable users of the property." *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *25. It then refused to dismiss the claim.

JWM persuasively argues here that, like a contractor, Terracon has an independent duty to foreseeable users of property for which it has tendered its geotechnical engineering services. (ECF No. 17 at PageID 1165–66.) The relationship between a contractor and foreseeable users of property strikes the Court as no different from the relationship an engineer testing for suitable construction site conditions has with foreseeable users of that property. After all, in both cases, those who build—or authorize building—a project can create a risk of harm to foreseeable users of the property if they do not perform their work in a workmanlike manner that ensures the project's safety and stability. Of course, the owner of the project—whether original or

---

seller of the [p]roperty and general contractor" are not always the same, "the law treats them differently and imposes a duty of care on contractors that they owe to all foreseeable users of the structures they build, not just those who hire them to build such structures").

subsequent—is a foreseeable user of it.  And so, "by virtue of [their] relationship," Terracon

owed to JWM, as a foreseeable user of the Project, a duty to use ordinary and professional skill

and care in performing its geotechnical engineering work.

In response, Terracon tries to distinguish *FC Cox* from this case on two grounds.  First, it

emphasizes that the plaintiff in *FC Cox*, unlike JWM here, was an assignee of the original

contracts and thus could enforce the contractual rights of the original owner.  (ECF No. 19 at

PageID 1184.)  But the *FC Cox* court's discussion about assignees related to its economic loss

doctrine analysis and not to the existence or scope of a duty.[7]  *See FC Cox*, 2023 U.S. Dist.

LEXIS 121109, at *14–16.  Besides, as the court explained, the plaintiff's duty of reasonable

care arose independently from the contract, making its assignee status irrelevant to the duty

analysis.  *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *25; *see also* Tenn. Code Ann. § 29-34-

104 (codifying the rule that privity of contract is unnecessary to maintain a negligence action).

And so, whether JWM was an assignee to the contract here is also irrelevant to whether Terracon

owed it a duty of reasonable care.  *See Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630,

638 (Tenn. Ct. App. 1993) ("Determining the terms of the contract, however, is unnecessary

because neither the existence or terms of a contract control our analysis.  Even if [defendant]

---

[7] In Tennessee, the economic loss doctrine generally precludes recovery when the plaintiff seeks "purely economic damages" and "lacks privity of contract with the defendant."  *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *8 (citing *United Textile Workers, etc. v. Lear Siegler Seating Corp.*, 825 S.W.2d 83, 83, 87 (Tenn. Ct. App. 1990) (defining the economic loss doctrine)).  The economic loss doctrine did not bar the *FC Cox* plaintiff's claims because it, as an assignee, was in privity of contract with the defendants.  *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *14.  And JWM and Terracon are not in privity here.  (*See* ECF No. 19 at PageID 1183–84.)  But this does not matter because JWM alleges property damage and not "purely economic" loss.  (*See* ECF No. 1-1 at PageID 9 (alleging the warehouse concrete slab "was undermined, had collapsed, and required immediate repairs").)  *Lear Siegler*, 825 S.W.2d at 87.  Thus, the doctrine does not preclude JWM from recovering on a negligence claim here, either.

were under no contractual duty to do the welding, it had a duty to perform the repairs with reasonable care and skill . . . .").

Second, Terracon contends that *FC Cox* does not apply because, unlike the defendant contractor, "Terracon did not *build* anything." (ECF No. 19 at PageID 1184.) But this too narrowly interprets the case. Terracon did not need to build anything to owe this duty. In fact, "Tennessee courts have made clear that the duty to perform in a workmanlike manner applies not only in all construction contracts, but all service contracts." *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *22–23 (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011)). And in any case, the Court disagrees that Terracon did not "build" anything. Accepting JWM's factual allegations as true, as the Court must, Terracon was responsible for geotechnical engineering on the soil and subsurface and for testing the soil beneath the Project, which is arguably part of the building process—even if Terracon did not pour the cement. (ECF No. 1-1 at PageID 8; *see* ECF No. 14-2 at PageID 595–96, 762–63 (contracts between Terracon and TPA outlining Terracon's service obligations).)

### 2. Services Offered

Although the duty to use reasonable care is not formed by contract, the *scope* of that duty is based on the aspects of the project Terracon agreed to perform in the Contracts. *See Grogan*, 535 S.W.3d at 875 (stating that, even when the parties lack privity, "the limited scope of defendants' undertaking is nonetheless relevant in determining whether a tort duty to others should arise from their performance of the contractual obligations" (citation omitted)). For example, JWM alleges here that Terracon failed to use reasonable care in supervising the work on the Project. But Terracon counters that it did not agree to "supervise" the construction and only offered its engineering services on an "as-requested basis." (ECF No. 19 at PageID 1185–

86 (citing specific paragraphs of the Contracts); *see generally* ECF No. 1-1 (alleging Terracon

failed to "supervise" with reasonable care); ECF No. 14-2 at PageID 595–96, 755, 762–63 (the

Contracts and terms of services).)  Of course, this is relevant.  After all, Terracon cannot be

liable for failing to perform services that Terracon did not agree to perform or that JWM never

requested.  *Id.* ("A building codes inspection was outside the scope of the services rendered by

the defendant home inspector, and he cannot be held liable for failure to perform a building

codes inspection with reasonable care."); *see also Conopco, Inc. v. Allen & Hoshall & RPM,

Inc.*, No. 01-2784 Ma/A, 2003 U.S. Dist. LEXIS 27992, at *29 (W.D. Tenn. Aug. 21, 2003),

*aff'd*, 129 F. App'x 131 (6th Cir. 2005) ("Because [defendant] did not have a contractual duty to

supervise the floor design, it could not have had a duty to engage in that supervision with the

care and skill of an architect.").  (ECF No. 14-2 at PageID 755 (offering services on an "as-

requested basis").)

But at this stage, because the Court accepts Plaintiff's factual allegations as true, the

Court need not opine on or decide exactly what Terracon did, in fact, agree to do.  If discovery

reveals that Terracon did not agree to perform some of the alleged services, the Court will

address that issue later.

Lastly, to further clarify the scope of Terracon's duty, Terracon can be liable in tort for

failing to use reasonable care when undertaking its contractual obligations, but it cannot be liable

in tort for failing to comply with purely contractual quality standards.  After all, a duty in tort

arises independently of a contractual duty even though the standards may overlap.  *Burris v.

Hospital Corp. of America*, 773 S.W.2d 932, 935 (Tenn. Ct. App. 1989) (defining tort as "a

wrong independent of contract"); *FC Cox*, 2023 U.S. Dist. LEXIS 121109, at *24–25 (explaining

the independent duty doctrine); *Chi. Title Ins. Co. v. Dewrell Sacks, LLP*, Case No. 3:08-1083,

2009 U.S. Dist. LEXIS 109757, *20 (M.D. Tenn. Nov. 24, 2009) (dismissing negligence claims

where "the supposed additional tort 'duties' are indistinct from the obligations imposed by the

Agency Contract" and "'no distinct tort claims [are] stated'" (citation omitted)); *Thomas &*

*Assocs. v. Metro. Gov't of Nashville & Davidson Cnty.*, 2003 Tenn. App. Lexis 425, at *18

(Tenn. Ct. App. June 6, 2003) ("Conduct constituting breach of contract becomes tortious only

when it also violates a duty, independent of the contract, arising from wider principles of social

responsibility.").  To the extent that JWM has a claim for breach of a contractual but non-tortious

duty, the claim arises in contract, which the Court discusses below.

For the above reasons, the Court **DENIES** the motion to dismiss JWM's negligence

claims.

## II.    Misrepresentation

JWM also alleges intentional[8] and negligent misrepresentation against Terracon.  (ECF

No. 1-1 at PageID 17–20.)  And Terracon moves to dismiss these claims because JWM's

reliance on its representations was unreasonable.  The Court agrees that reasonable reliance is the

primary issue here and will first set out the law for each claim before analyzing how it applies

here.

### A.    Intentional Misrepresentation

For a plaintiff to bring a viable claim for intentional misrepresentation, it must allege

(1) that the defendant made a representation of a present or past fact; (2) that the
representation was false when it was made; (3) that the representation involved a
material fact; (4) that the defendant either knew that the representation was false or
did not believe it to be true or that the defendant made the representation recklessly

---

[8] JWM alleges "fraudulent misrepresentation," but under Tennessee law, "'intentional
misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same
cause of action." *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012).  And the Tennessee
Supreme Court "suggest[s]" that courts "exclusively" use the term "intentional
misrepresentation." *Id.* at 343.

without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). Under the reliance requirement of the fifth element, Tennessee courts typically consider, among other factors, the plaintiff's sophistication, the parties' relationship, and the specificity of the misrepresentation. *Davis v. McGuigan*, 325 S.W.3d 149, 158 (Tenn. 2010).

But in *Davis v. McGuigan*, the Tennessee Supreme Court adopted a different approach for cases in which a third party is attempting to hold another liable for a representation it received indirectly. 325 S.W.3d at 158–60. The *Davis* court explained that the plaintiffs' claim "differs from most intentional misrepresentation claims. The [plaintiffs] do not allege that [the defendant] directly represented to them the [relevant information]." *Id.* at 158. Rather, the defendant gave the information to a different entity that "conveyed" the information to the plaintiffs, who then relied on the representation. *Id.* As a result of that indirect representation, the court adopted and applied § 533 of the Restatement (Second) of Torts[9] instead of its ordinary reliance rule. *Id.* at 159. Under § 533, a plaintiff must allege that (1) its reliance was reasonable, (2) the defendant intended or expected the plaintiff to receive the representation, and (3) the defendant intended or expected that the representation would affect the plaintiff's conduct.

---

[9] Section 533 states that

> [t]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

*Davis v. McGuigan*, 325 S.W.3d 149, 159 (Tenn. 2010) (adopting § 533 of the Restatement (Second) of Torts).

Of course, the facts here present a similar situation to *Davis*. Terracon allegedly communicated soil data conditions to TPA, who then conveyed that information about the soil to JWM. In turn, JWM allegedly relied on that representation. And so, the Court uses § 533, and Tennessee's three-part construction of it, to analyze JWM's intentional misrepresentation claims here.

### B.    Negligent Misrepresentation

Tennessee law has adopted § 552 of the Restatement (Second) of Torts "as the guiding principle in negligent misrepresentation actions against other professionals and business persons." *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991); *see also Forest Creek Townhomes, LLC v. Carroll Prop. Mgmt., LLC*, 695 F. App'x 908, 914 (6th Cir. 2017) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991)). Section 552 imposes liability in the following situation:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> > (a)  by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> > (b)  through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
> (3)  The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Restatement (Second) § 552.

The Supreme Court of Tennessee has interpreted this rule to "permit recovery for economic losses and dispense with privity of contract for negligent misrepresentation claims." *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 151 (Tenn. 2021) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991)).  And even though it only applies in commercial contexts, *see Robinson v. Omer*, 952 S.W.2d 423 (Tenn. 1997), it governs negligent misrepresentations by both professionals and nonprofessionals, *Ritter v. Custom Chemicides*, 912 S.W.2d 128 (Tenn. 1995).

### C.      Reasonable Reliance Analysis

As discussed above, under Tennessee law, both intentional and negligent misrepresentation claims require a plaintiff to plausibly allege, among other things, that it reasonably relied on the defendant's misrepresentation.  *See Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (requiring that the plaintiff be "justified in relying on the truth of the representation"); Restatement (Second) of Torts § 552 (imposing liability when plaintiffs suffer pecuniary loss "by their justifiable reliance upon the [false] information").  And for a third party to show justifiable reliance on a representation it received through another, the party making the representation must have intended or expected that third party receive and rely on it.  *See* Restatement (Second) of Torts § 533 (limiting liability for intentional misrepresentation to cases in which "the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other"); § 552 (limiting liability for negligent misrepresentation claims from third parties to situations when the defendant "intends to supply the information or knows that the recipient intends to supply it" to third parties).

Terracon asserts that JWM unreasonably relied on Terracon's representations[10] because the Contracts included a clause prohibiting third-party representations and reliance. (ECF No. 14-1 at PageID 582; ECF No. 19 at PageID 1187–89.) The provision states that "[r]eliance upon the Services and any work product is limited to Client, and is not intended for third parties other than those who have executed Consultant's reliance agreement, subject to the prior approval of Consultant and Client." (ECF No. 14-2 at PageID 595, 762.) Terracon further argues that JWM cannot prevail because it is "a complete stranger to the contracts executed between Terracon and the original owner of the property."[11] (ECF No. 14-1 at PageID 582; ECF No. 19 at PageID 1187–89.) This first argument fails because, as Terracon repeatedly emphasizes, JWM is not a party to the Contracts, so it is unclear how these contract provisions affect JWM's rights. (*See generally* ECF Nos. 14-1, 19 (emphasizing lack of privity).) True enough, JWM was not only a "stranger" to the contract, but also nothing suggests JWM had a chance to read or know about the third-party-representation clause. After all, TPA did not assign the contract to JWM. (ECF No. 19 at PageID 1183–84.) And so Terracon's argument based on the Contract's terms is more persuasive for claims based in contract than it is for claims based in tort.

---

[10] Terracon denies that any of its statements were misrepresentations. (ECF No. 14-1 at PageID 581.) But JWM has alleged which statements it believes to be false. (ECF No. 1-1 at PageID 17, 19–20; ECF No. 14-2 at PageID 765; *see also* ECF No. 17 at PageID 1168.) And so, accepting these allegations as true, as the Court must, the Court finds JWM has sufficiently pleaded this element to survive dismissal. *See Marchek*, 118 F.4th at 833.

[11] The irony of these arguments is not lost on the Court. According to Terracon, JWM cannot rely on any representations Terracon made in performance of the Contracts because JWM was not a party to or third-party beneficiary of them. And yet, even though JWM was not a party to or beneficiary of the Contracts, the contract terms related to third-party reliance somehow still preclude JWM from recovering for Terracon's misrepresentation. Terracon cannot simultaneously apply the Contracts defensively in one argument to deprive JWM of their benefits and affirmatively in the other to hold it bound by their obligations. As discussed below, the place to consider Terracon's position is the question of JWM's reliance.

But Terracon's second argument has merit. Of course, as JWM correctly points out, Tennessee has "dispense[d] with privity of contract for negligent misrepresentation claims," so being a "stranger" to the contract does not automatically defeat JWM's claim. *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 151 (Tenn. 2021) (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 435 (Tenn. 1991)). But the lack of privity is still relevant to whether JWM reasonably relied on Terracon's representations and whether Terracon intended or expected JWM to receive its representations.

Plaintiff has alleged here that Terracon misrepresented or concealed information about the soil, that Terracon knew that its representations were false, that the information was material, that JWM relied on the information, and that it caused JWM harm. (ECF No. 1-1 at PageID 17–20.) And Plaintiff argues that, because the Court must accept its factual allegations as true, anything more is a fact question that should not be decided on a motion to dismiss. (ECF No. 17 at PageID 1168; *see also* ECF No. 1-1 at PageID 18, 20 ("JWM reasonably relied upon Terracon's misrepresentations of material fact . . . .").) *See Davis v. McGuigan*, 325 S.W.3d 149, 158 (Tenn. 2010) ("Whether a person's reliance on a representation is reasonable generally is a question of fact requiring the consideration of a number of factors.").

But JWM has not alleged the required element that Terracon intended or expected JWM, or some similar third party, to receive and rely on its reports or letter. (*See* ECF No. 1-1 at PageID 17–20.) *See also* Restatement (Second) of Torts § 533 (requiring the party "intend[] or ha[ve] reason to expect that its terms will be repeated or its substance communicated to the other"); § 552 (requiring the party "intend[] to supply the information or know[] that the recipient intends to supply it" to specific third parties). And even viewing the facts in the light

most favorable to JWM, the Court cannot infer this intent or knowledge.  *See Marchek*, 118 F.4th at 833.  In fact, the record reasonably suggests the opposite.

The Contracts' no-third-party-reliance provisions convey Terracon's intent about third party reliance.  And that contractual provision gave Terracon reason to believe that TPA would not provide Terracon's work product to third parties unless Terracon authorized TPA to do so.  (*See* ECF No. 14-2 at PageID 762 ("Reliance upon the Services and any work product is limited to Client, and is not intended for third parties other than those who have executed Consultant's reliance agreement, subject to the prior approval of Consultant and Client.").)  What is more, the fact that JWM was not in privity with Terracon—though it does not determine the outcome— further suggests that Terracon had no intent or expectation that Plaintiff would receive and rely on its letters or reports.  And so, the Court **DISMISSES** the misrepresentation claims.

## III.    Fraudulent Concealment

Terracon also moves to dismiss JWM's fraudulent concealment claim.  (ECF No. 14-1 at PageID 580–82; *see also* ECF No. 1-1 at PageID 18–19.)  Tennessee courts have applied various elements to fraudulent concealment claims, but the tort generally requires a plaintiff to allege that the defendant concealed a material fact that it had a duty to disclose, that the plaintiff did not know about the concealed fact, and that the plaintiff suffered harm as a result of the concealment.[12]  That said, "[t]he Tennessee Supreme Court has explained there can be no tort of

---

[12] The Parties cite different constructions of the elements for fraudulent concealment.  (*See* ECF No. 17 at PageID 1169 (citing a four-part test in *Estate of Morris v. Morris*, 329 S.W.3d 779, 784 (Tenn. Ct. App. 2009); ECF No. 14-1 at PageID 581 (citing a two-part test in *Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998).)  And the Court's research has also found competing tests. *See, e.g.*, *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 527 (6th Cir. 2007) (applying a five-part test).  But in every case, the defendant had to have a duty to speak.  Because the Court ultimately bases its decision on this issue of duty, the Court does not apply a specific test for fraudulent concealment.

fraudulent concealment absent a duty to disclose." *Saltire Indus.*, 491 F.3d at 527 (quoting

*Patten v. Standard Oil Co. of La.*, 55 S.W.2d 759, 761 (Tenn. 1933)).  And a duty to disclose

only arises

> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.
>
> 3. Where the contract or transaction is intrinsically fiduciary and calls for perfect good faith.  The contract of insurance is an example of this class.

*Id.* at 528 (citation omitted); *Domestic Sewing Machine Co. v. Jackson*, 83 Tenn. 418, 425 (Tenn.

1885) (emphasis omitted).  What is more, "[w]here there is no dealing between the parties, there

can be no concealment."  *Id.* (quoting *Patten*, 55 S.W.2d at 761).

Terracon argues here that it was not reasonable for JWM to rely on representations from

a company with whom it is not in privity (ECF No. 14-1 at PageID 581–82), and JWM counters

that reasonableness of reliance is a fact question (ECF No. 17 at PageID 1170).  The Court does

not opine on the reasonableness of the reliance here, but it agrees with Terracon that the lack of

privity is fatal to JWM's fraudulent concealment claim.  JWM was not a party to, third-party

beneficiary of, or assignee of Terracon's contract with TPA, so the Parties had no "definite

fiduciary relation."  (*See* ECF No. 1-1; ECF No. 17 at PageID 1172; ECF No. 19 at PageID

1183–84.)  *See Saltire Indus.*, 491 F.3d at 528.  Moreover, absent a contract or other dealings

between them, one could not "expressly repose[] a trust and confidence in the other."  *See id.*

("Clearly the first and second categories [for when a duty to disclose arises] do not apply because

no fiduciary or contractual relationship existed between the two parties.").  And nothing suggests

that, like an insurance contract, Terracon's service agreement with TPA "is intrinsically fiduciary

and calls for perfect good faith."  Terracon therefore had no duty to disclose any information to JWM, so the Court **DISMISSES** JWM's fraudulent concealment claim.

## IV.    Civil Conspiracy

JWM further alleges civil conspiracy against Terracon.  (ECF No. 1-1 at PageID 20–21.)  A civil conspiracy is "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff."  *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002); *see also Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 188 (6th Cir. 2004).  And to survive a motion to dismiss a civil conspiracy claim, a plaintiff must allege "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury."  *Pagliara v. Moses*, 605 S.W.3d 619, 627 (Tenn. Ct. App. 2020) (quoting *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)).

What is more, because civil conspiracy is not an independent claim but is instead a way to impose liability, "[c]ivil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy."  *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007); *see also ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 967 (M.D. Tenn. 2011).  And when the alleged underlying tort fails, so too does the conspiracy claim.  *See Gammons v. Adroit Med. Sys.*, 91 F.4th 820, 832 (6th Cir. 2024) ("Because we reject both of [plaintiff's] tortious interference claims, his civil conspiracy claim must also fail due to the absence of a viable underlying tort claim."); *Pagliara*, 605 S.W.3d at

627 ("Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." (citation omitted)).

Terracon moves to dismiss because JWM did not allege an "overt act in furtherance of the conspiracy," there is no "underlying wrongful conduct," and JWM did not allege any facts to infer Terracon shared a known intent with anyone else to engage in wrongful conduct.  (ECF No. 14-1 at PageID 582–85 (citation omitted).)  Essentially, Terracon argues that the Court should dismiss this claim because JWM's assertions are legal conclusions without factual support.  (*See id.* at 584 ("Plaintiff's civil conspiracy claim is the epitome of what *Iqbal* counsels against: threadbare legal conclusions unsupported by factual allegations.").)  *See Snyder-Hill*, 48 F.4th at 717 ("Only factual allegations in the complaint are taken as true; conclusory statements and legal conclusions, even if couched as a factual allegation, are not entitled to be assumed true." (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678–79, 681)).  The Court agrees.

These are JWM's allegations for its civil conspiracy claim:

83. JWM restates and re-alleges paragraphs 1–38 above as if fully set forth herein.
84. Terracon conspired together with Evans and/or others to be proven at trial in a scheme that was intended to accomplish an unlawful purpose or a lawful purpose by unlawful means.
85. Terracon shared a common plan or design and was aware of the common plan or design and the intent of the other co-conspirators to participate in that common plan or design.
86. Terracon took overt acts in furtherance of the conspiracy by furnishing documents and reports, including without limitation the Terracon Letter, that were false and, otherwise, made material misrepresentations concerning the placement, compaction, reporting and testing of soils on the Project.
87. As a result of Terracon's conspiracy, JWM has incurred significant damages.

(ECF No. 1-1 at PageID 20–21.)  And paragraphs 1–38 provide little more factual background that could support this conspiracy claim.  (*See generally* ECF No. 1-1 at PageID 4–11.)

JWM's allegations simply repeat the elements of a claim for civil conspiracy.  They provide no factual basis for what "scheme" or "common plan or design" Terracon shared with

others; who, beyond Evans, joined the conspiracy; how they communicated their scheme to each other; or how the letter, reports, and representations Terracon made played any role in the conspiracy. And, despite civil conspiracy requiring co-conspirators to knowingly share an intent to commit wrongful conduct, JWM fails to allege plausible facts about the intentions of anyone else who was allegedly part of the conspiracy. (*See generally* ECF No. 1-1; *see also* ECF No. 1-1 at PageID 8 (identifying Evans as the general contractor and Rogers Mechanical Contractor Inc. and Yancey Brothers Construction as subcontractors but alleging nothing regarding their intent or communications with Terracon).) *Cf. Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 189 (6th Cir. 2004) (affirming the district court's judgment for defendants where "th[e] evidence does not establish that either [defendant] intended to defraud the partnership—or even that the [defendants] knew that [the alleged co-conspirator] intended to defraud the partnership").

What is more, even if JWM had plausibly alleged civil conspiracy, the claim still would not be actionable. There is no underlying wrongful conduct because, as discussed in the other sections, JWM's claims for misrepresentation, fraudulent concealment, and breach of warranty all fail.[13] Without a viable cause of action, the conspiracy claim fails too. *Pagliara*, 605 S.W.3d at 627 ("Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." (citation omitted)); *see also Gammons v. Adroit Med. Sys.*, 91 F.4th 820, 832 (6th

---

[13] If JWM's conspiracy claim suggests the common scheme or plan was negligence, the claim fails. Negligence, of course, is not an intentional wrong. *Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 61 (Tenn. 2023) ("Negligence does not require proof that the defendant intended to harm the plaintiff or of any other mental state."). But conspiracy requires the actors intend to commit the wrong. *Trau-Med*, 71 S.W. 3d at 703. Thus, a party cannot conspire to commit negligence. *See JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 784 (M.D. Tenn. 2022) ("Because negligence by definition is not an intentional wrong, one cannot agree or conspire to be negligent." (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996))); *cf. Kincaid*, 221 S.W.3d at 39 n.8 (stating, in dicta, that "some states have held that conspiracy to commit constructive fraud is a legal impossibility because one cannot conspire to commit a crime for which he does not have the intent to commit").

Cir. 2024) (deciding plaintiff could not succeed on the civil conspiracy claim because the

tortious interference claims failed).  The Court therefore **DISMISSES** JWM's claim for civil

conspiracy.

## V.    Breach of Warranty

JWM finally alleges that Terracon violated both express and implied warranties.  (ECF

No. 1-1 at PageID 21–22.)  And Terracon moves to dismiss, arguing that JWM cannot sue on

any contractual warranty because it was not a party to the contract.[14]  (ECF No. 14-1 at PageID

585–89; ECF No. 14-2 at PageID 595, 762.)  Terracon is correct.

This warranty claim is a contract claim.[15]  The Contracts have a choice of law provision

requiring the Court to apply Kansas law to claims based on contract.  (ECF No. 14-2 at PageID

---

[14] Terracon also argues that JWM overstates the warranties Terracon made in its contract with
TPA.  (ECF No. 14-1 at PageID 585–86.)  This is true.  JWM broadly claims that Terracon
"expressly and impliedly represented and warranted that Terracon would use reasonable care and
skill in the execution of its services, and that such services would be free from defects and fit for
its intended purpose." (ECF No. 1-1 at PageID 21.)  And it alleges Terracon "expressly and
impliedly represented and warranted that its services and the soils activities on the Project were
performed in accordance with the requirements of the Geotechnical Report, the *Building Code*,
and the Project requirements."  (*Id.*)  But the Contract only warrants that Terracon "will perform
the Services in a manner consistent with that level of care and skill ordinarily exercised by
members of the profession currently practicing under similar conditions in the same locale."
(ECF No. 14-2 at PageID 595, 762.)  And in capital, bold text, it expressly disavows any
"warranties or guarantees, express or implied, relating to [its] services and [Terracon] disclaims
any implied warranties or warranties imposed by law, including warranties of merchantability
and fitness for a particular purpose." (*Id.* (emphasis omitted).)  And so, any allegations that
Terracon warranted anything more than to use reasonable professional care is inaccurate.  In any
case, to whatever extent any warranties exist, JWM's claims fail as a matter of law, which the
Court discusses above.
[15] Technically, a claim for breach of an implied warranty can sound in contract or in tort.  *David
v. Hett*, 270 P.3d 1102, 1112–13 (Kan. 2011).  But based on the Complaint and JWM's brief in
opposition to dismissal—which focuses only on the contract and JWM's relationship to it—the
Court construes the claim as one in contract.  (*See generally* ECF No. 1-1; ECF No. 17 at PageID
1172–73.)  And through the contract, Terracon has disclaimed all implied warranties, which
Kansas law treats as effective.  (ECF No. 14-2 at PageID 595, 762 ("Except for the standard of
care previously stated, [Terracon] makes no warranties or guarantees, express or implied,
relating to [Terracon's] Services and [Terracon] disclaims any implied warranties or warranties

596, 763.)  And so the Court will apply Kansas law here.  Under Kansas law, "[b]reach of warranty actions, like all breach of contract actions, must be brought by parties who are in privity of contract."  *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 675 P.2d 887, 897 (Kan. 1984) (citation omitted); *State ex rel. Stovall v. Reliance Ins. Co.*, 107 P.3d 1219, 1230–31 (Kan. 2005) (citation omitted) ("[I]t is essential to the maintenance of any action on any contract that there should subsist a privity between the plaintiff and defendant in respect of the matter sued on.").  Or, if there is no contractual privity, "Kansas law allows a qualified third-party beneficiary plaintiff" to bring a claim on the contract.  *Id.*  A party is a third-party beneficiary when the contract is made and intended to benefit it, and such intent is "clearly expressed in the contract."  *Id.* at 1231.  And so, JWM's contract claims for breach of express or implied warranties can only survive dismissal if JWM has plausibly alleged privity or that it is a third-party beneficiary.  *Id.* at 1230–31 (citation omitted) (explaining the privity and third-party beneficiary requirements for bringing an action based on contract).

Of course, there is no privity of contract here because JWM does not allege that it was a party or assignee[16] to the Contracts.  (*See generally* ECF No. 1-1 (failing to allege any facts that

_____

imposed by law, including warranties of merchantability and fitness for a particular purpose." (emphasis omitted)).)  *See David*, 270 P.3d at 1112 ("[A] contract to do work or perform a service includes an implied warranty that the work will be done in a workmanlike manner, using appropriate care and skill, *unless there is an express agreement that no such warranty may be implied*." (emphasis added)).  In any case, even if Terracon could not disclaim the implied warranty, the one imposed under law is no greater than the one the contract preserves.  (*Compare* ECF No. 14-2 at PageID 595, 762 ("[Terracon] will perform the Services in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale."), *with David*, 270 P.3d at 1112 ("[A] contract to do work or perform a service includes an implied warranty that the work will be done in a workmanlike manner, using appropriate care and skill . . .").)

[16] JWM's brief in opposition to the motion to dismiss argues that "the agreement between Terracon and the original owner was fully assigned to JWM."  (ECF No. 17 at PageID 1172.) But the Complaint does not allege this.  (*See* ECF No. 1-1.)  And JWM has since clarified that it was not an assignee.  (ECF No. 19 at PageID 1183–84 ("On August 27, 2024, counsel for JWM

JWM entered a contract with Terracon); ECF No. 14-2 at PageID 595–96, 762–63 (Contracts

between Terracon and TPA); ECF No. 19 at PageID 1183–84 (JWM stipulating it was not an

assignee).)  And JWM is not a third-party beneficiary of the Contracts between Terracon and

TPA, either.  (*See generally* ECF No. 1-1 (failing to allege any facts that JWM is a third-party

beneficiary to the contract between Terracon and TPA).)  In fact, the Contracts do not mention

JWM at all—let alone "clearly express[]" any intention to benefit it.  (ECF No. 14-2 at PageID

595–96, 762–63.)  *See Stovall*, 107 P.3d at 1231.  What is more, JWM acknowledges that it "is

not alleging it is a third-party beneficiary."  (ECF No. 17 at PageID 1172.)

    For these reasons, JWM has failed to state a claim to relief on its warranty claims.  Even

viewing the allegations in the light most favorable to JWM and resolving reasonable inferences

in its favor, the Court sees no basis for finding privity of contract or third-party beneficiary

standing for JWM to sue on the contract.  And so, the Court **DISMISSES** JWM's claims for

breach of express and implied warranties.

<u>**CONCLUSION**</u>

    For the reasons explained, the Court **DENIES** the motion as to the claims for negligence

and professional negligence.  But the Court **GRANTS** Terracon's motion to dismiss the claims

for intentional and negligent misrepresentation, fraudulent concealment, civil conspiracy, and

breach of express and implied warranties.

    **SO ORDERED**, this 27th day of March, 2025.

 s/Thomas L. Parker
_____
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

confirmed that the two Terracon agreements with the original owner (the Soils Design
Agreement and the Materials Testing Contract) were not assigned to JWM and that the assertion
on pages 15–16 of its Opposition Memo was a mistake." (emphasis omitted)).)